UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NORTH CAROLINA

UNITED STATES OF AMERICA,           )
                                    )
          Plaintiff,                DOCKET NO. 5:18-cr-00299-FL1
                                    )
     VS.                            )
                                    )
DIANA PATRICIA FRANCO-RODRIGUEZ,    )
                                    )
          Defendant.                )
                                    )
_____     )

                 TRANSCRIPT OF INITIAL APPEARANCE
             BEFORE MAGISTRATE JUDGE JAMES E. GATES
               WEDNESDAY, AUGUST 22, 2018; 3:10 P.M.
                     RALEIGH, NORTH CAROLINA

FOR THE PLAINTIFF:
     United States Attorney's Office
     By:  Sebastian Kielmanovich, AUSA
     150 Fayetteville Street, Suite 2100
     Raleigh, NC  27601

FOR THE DEFENDANT:
     Federal Public Defender's Office
     By:  Laura S. Wasco, AFPD
     150 Fayetteville Street, Suite 450
     Raleigh, NC  27601

Interpreter:              Houda El Idirissix

Audio Operator:           COURT PERSONNEL


     Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

                    JANICE RUSSELL TRANSCRIPTS
                       1418 Red Fox Circle
                      Severance, CO  80550
                        (757) 422-9089
                     trussell31@tdsmail.com

P R O C E E D I N G S

(Call to Order of the Court)

THE COURT: Good afternoon, folks.

(Counsel greet the Court)

THE COURT: Madam Clerk, would you please swear the interpreter?

(Interpreter sworn)

(The following proceedings were had with the aid of Certified Spanish Court Interpreter Houda El Idirissix)

* * *

THE COURT: All the matters that are set for initial appearances here this afternoon are presently under seal. Is there a motion to unseal them?

MR. KIELMANOVICH: There is, your Honor. Also, the order itself says the time of the arrest.

THE COURT: Very well.

MR. KIELMANOVICH: So -- but we move, if necessary.

THE COURT: Thank you, sir.

I'll confirm, then, on the record that all of these matters are unsealed.

* * *

THE COURT: Very well.

Let me then first announce the cases that are before the Court for initial appearances. We've already mentioned ***. There's also the following cases. I'll just list the

names of the defendants: ***, Diana Franco-Rodriguez. That's Diana Patricia Franco-Rodriguez, ***.

And we do have an interpreter here. We know of four of you folks -- and now, I guess, an additional, five -- but four who need Spanish-language interpretation. And you folks have an interpreter here.

For those of you who are not using an interpreter, if the interpreter's having to speak, her speaking interferes with your being able to hear me and the prosecutor when the prosecutor speaks, please just raise your hand and we'll make what arrangements we need to to make sure that you hear all the proceedings that are occurring.

So with that introduction, folks, let me advise you that for all of you this is your initial appearance in United States District Court for the Eastern District of North Carolina. We are not here this afternoon, of course, to determine whether you are guilty or not guilty on the charges that have been brought against you. That's an issue for the future. Rather, the purpose of this proceeding is to formally advise you of the charges against you, the maximum penalties associated with those charges, as well as to advise you of important rights that you have under the Constitution and laws of the United States.

The first right I want to advise you of is your right to counsel, that is, your right to have a lawyer or an

attorney. All of those terms, lawyer, attorney, counsel mean the same thing and refer to a person's legal representative. You're entitled under the Constitution and laws of the United States to be represented by an attorney at every stage of the proceedings, including during any questioning by the authorities, at any lineup, and at all court proceedings, including this initial appearance. You may consult with an attorney before questioning may occur at any proceeding. If you are unable to afford counsel, then counsel will be appointed for you without cost.

Now I have reviewed the financial affidavits that all of you submitted for purposes of appointment of counsel.

And let me ask you this. Is there any one of you who would not like to have counsel appointed for you?

* * *

THE COURT: So with the exception of ***, is there anybody here today, folks, who would not like to have counsel appointed for them? Just raise your hand if that's true.

(No response)

THE COURT: Okay. Nobody -- I'll note for the record that nobody raised his or her hand. I, therefore, find that all of the defendants other than *** would like to have counsel appointed for them. I've reviewed the financial affidavits that each of you submitted for purposes of appointment of counsel and I'm entering orders in your cases appointing the

Federal Public Defender's Office to represent you.

Ms. Laura Wasco is the lawyer seated at counsel table. So she will be your lawyer for today. It's possible than one of her colleagues will be appointed to handle your case going forward. That's a normal process in our court. It should not be a cause of any concern. I say that because the Federal Public Defender's Office is much like a law firm that the Court has established in accordance with law. The very purpose of that office is to provide representation to folks who can't otherwise afford it. The Court oversees its operations to ensure that it provides quality service to its clients, which it does.

So you're in good hands with Ms. Wasco. As I say, you would be in good hands with any of her colleagues.

* * *

THE COURT: Now folks, as we go along here today, if any of you have any questions about the information that's being provided, you have Ms. Wasco as your lawyer here. I do want you to feel free to ask questions of her, if you do have questions. For your protection, though, I would ask that instead of asking a question out in the open, if you do have a question please just raise your hand and that will let Ms. Wasco know and me know that she needs to come over and speak with you privately. It's important that those discussions be private because anything that you say out in the open can be

used against you.  And everything that is being said in this courtroom is being recorded.  So there is a permanent record of it, that is, everything that's said out in the open.  What that means in, in practical terms is if a defendant asks a question or makes a comment that contains information that the Government could use against you in the prosecution, the Government lawyers, properly doing their jobs, could take a recording of that and play it back to a judge or a jury at a later date.  And that's, obviously, nothing that any defendant will want to have happen.

So please, if you need to speak with Ms. Wasco -- she's here to help you -- just raise your hand to let her know that you need to speak with her.

Ms. Wasco, do these folks have copies of the charging documents in their cases?

MS. WASCO:  They do, your Honor.

THE COURT:  Very well.  Thank you, ma'am.

Folks --

* * *

THE COURT:  Everybody else, other than ***, you have all been charged by way of indictments.  Indictments are charging documents that are issued by grand juries.  I want to begin my explanation of the charges against you by explaining what a grand jury is and what it does.

A grand jury is a group of between 16 and 23 people

who are drawn randomly from the public. The prosecutor, that is, an Assistant United States Attorney, presents charges to the grand jury, along with supporting evidence. The grand jury's job is to make two determinations, that is, the grand jury must decide two things. One, it must decide whether there is probable cause to believe that the crime or crimes alleged were committed. And probable cause means fair probability. Secondly, the grand jury must decide whether there is probable cause to believe that the defendant committed those crimes. If at least 12 of those grand jurors agree with the Government and find probable cause on both of those issues, then the grand jury will issue or return what is called a True Bill of Indictment, or simply Indictment for short. And it's the return of the indictment that begins the prosecution against the person.

In your cases, the grand juries that heard your cases did, at least 12 grand jurors on those grand juries did find probable cause to believe that the crime or crimes alleged against you were committed and probable cause to believe that you committed them. As a result, those grand juries returned indictments and those indictments commenced the prosecutions against you. Indictments typically issue with arrest warrants and that's why you're here in custody.

Now when a grand jury hears a case, it is entirely free to disagree with the Government. The grand jury is not a

governmental agency. It's an independent body, which means that if there are not 12 grand jurors who do agree with the Government on these two probable cause issues that I've talked about, then no indictment would be returned and the prosecution would not go forward.

So in essence, the grand jury has the authority to say to the Government, "No, you may not prosecute this person at this time." The fact that the grand jury has this authority gets to one of its core functions and that is to help protect against the Government just arbitrarily going out and prosecuting people when there is not an adequate basis to believe that they've committed a crime for which they may be prosecuted. It achieves this result, it helps provide this protection by forcing the Government to convince these people drawn from the community who are not working for the Government -- they're just regular people in the community -- that there is enough merit to a case, that is, probable cause, to justify the person being prosecuted.

So one way of thinking of this is that the grand jury is this independent body of people that stands between the Government and the accused and only if the Government can get past the grand jury, this independent body, can it go forward with the prosecution.

So this aspect of grand jury process is an important civil liberties protection.

With that introduction, folks, I want to turn now to the specifics of the indictments against you.

* * *

Now folks, in a moment I'm going to ask the prosecutor to advise you of the maximum penalties that you face on these charges. I want to explain some terminology that will be used so that you'll understand what he's talking about. I would ask all of you to listen to my explanation of this terminology.

One term is supervised release. Supervised release refers to a period of supervision of a defendant by the United States Probation Office that comes after any term of imprisonment. It's a like probation in that the defendant is free in the community, but subject to certain conditions that the Court sets and these are such things as having to report to a probation officer, drug testing, not committing any further offenses, conditions such as that.

Supervised release, though, is unlike probation in that it does not take the place of imprisonment, which probation typically does. But instead, as I indicated, it comes afterwards. It's designed to be a period of supervision and guidance for a defendant as that defendant transitions from life in prison back into regular civilian life. As you will hear, the law sets a maximum on the term of supervised release that may be imposed with respect to any particular offense.

You will also hear reference made to revocation of

supervised release. That refers to the circumstance in which there are sufficient violations of the conditions of release that the release is revoked and the defendant is returned to prison. In that circumstance, the law places a maximum on the term of imprisonment that may be imposed.

You will be advised that with respect to each of the offenses charged against you there is a special assessment. That is in the nature of a fee. For a felony offense, that is, an offense punishable by a term of imprisonment exceeding one year, that fee is a hundred dollars. For a misdemeanor offense, that is, an offense punishable by a term no greater than one year, the amount of the fee, the special assessment fee can vary. So you will be advised of whatever it is, to the extent you're charged with a misdemeanor offense.

The other dollar figure that you will be provided is the maximum fine. The maximum fine is a much larger number. It's in thousands of dollars and it is not in the nature of the fee, of a fee. It's in the nature of punishment.

But just keep in mind you'll be given those two dollar figures, the special assessment as well as the maximum fine.

* * *

THE COURT: And I'm correct, Mr. Kielmanovich, am I not, the Government's not seeking detention in any of these cases, correct?

MR. KIELMANOVICH: That's correct, your Honor. I

conferred with Probation and we discussed potential conditions --

THE COURT: Okay.

MR. KIELMANOVICH: -- to be submitted to the Court for consideration.

THE COURT: Very well. Thank you, sir.

THE INTERPRETER: Your Honor?

THE COURT: Yes, ma'am.

THE INTERPRETER: I had a question.

THE COURT: Ms. Wasco?

MS. WASCO: Thank you.

(Pause)

MS. WASCO: Thank you, your Honor.

THE COURT: Yes, ma'am.

* * *

THE COURT: By the way, folks, you've heard the prosecutor make a reference to detention. And I earlier asked, I inquired about the Government's position on the liberty status of all of you pending further proceedings in your case.

The Court is going to enter an order that provides for you to be released so that none of you will be held in custody, that is, detained, pending further proceedings in your case. In, in certain cases, it is appropriate for a defendant to be held in custody until the charges against him or her or resolved. That's not going to happen. It's not necessary in

this case.

So I want to tell you at the outset you are going to be released. There is a release order. It's the same for all of you. I need to go over it with you at the end of our proceeding here. But I wanted you to understand what these references were to liberty status and detention. That's what we're talking about. But again, we'll get to that a bit later in our proceeding here this afternoon.

Let me turn now to the case involving Ms. Diana Patricia Franco-Rodriguez.

The indictment in this case is a two-count indictment, meaning that two separate crimes are charged. And there is also a section, as you can see, entitled General Allegations and this is, essentially, background information that helps in the understanding of the two counts that are charged, each count representing a separate crime.

Okay. The General Allegations section first describes the Immigration and Nationality Act, abbreviated INA, and that it governs immigration laws of the United States.

The term "alien" is defined to mean any person not a citizen or national of the United States.

It -- it -- the indictment goes on to state that under the INA, aliens are not permitted to permanently reside in the United States unless they are lawful permanent residents. It alleges that you, ma'am, Ms. Franco, was an alien born in

Chihuahua, Mexico; that on September 3rd of 2009 you were granted lawful permanent resident status in the United States pursuant to the INA; that since September 3rd of 2009 you had not met the criteria for derivation of United States citizenship; that on or about August 29 of 2012 you registered to vote in North Carolina and attested under the penalty of perjury that you were a citizen of the United States; that on or about June 29 of 2016 you applied for United States citizenship and attested under the penalty of perjury that you had never claimed to be a United States citizen. It also alleges that you were assigned a polling place located in Wake County, North Carolina; that you voted in the general election of 2016 in Wake County while your application for naturalization was pending; and that on June 29 of 2017 your application for naturalization was denied. It also alleges that Wake County is in this District, the Eastern District of North Carolina.

That's the introductory section.

Count 1, then it goes on to charge, that on or about June 29 of 2016, in this District, you did knowingly make under oath and did knowingly subscribe as true under penalty of perjury, under Title 28 of the United States Code, Section 1746, a false statement with respect to a material fact in an application required by the immigration laws and regulations prescribed thereunder, that is, you stated falsely in an

application for naturalization, that is, Form N-400, that you had never claimed to be a United States citizen when, in fact, as you then knew, you had claimed to be a United States citizen in a North Carolina voter registration application on or about August 29 of 2012. This offense would be in violation of Title 18 of the United States Code, Section 1546(a).

Count 2 alleges that on or about November 8 of 2016, in this District, you, being an alien, knowing that you were not a United States citizen, did knowingly vote in an election held, in part, for the purpose of electing a candidate for the office of President, Vice President, and member of the House of Representatives, in violation of Title 18 of the United States Code, Section 611(a).

Mr. Kielmanovich, could you please advise Ms. Franco of the penalties she faces on those charges?

MR. KIELMANOVICH: Yes, your Honor.

With respect to Count 1, fraud and misuse of visas, permits, and other documents, the penalties are as follows: If the offense was committed to facilitate an act of international terrorism, the penalties are not more than 25 years imprisonment, $250,000 fine, or both, not more than 5 years supervised release, not more than 3 years of imprisonment upon revocation of supervised release, a $100 special assessment, and restitution. If the offense was committed to facilitate a drug-trafficking crime, the statute provides that the defendant

shall face not more than 20 years imprisonment, $250,000 fine, or both, not more than 3 years of supervised release, not more than 2 years imprisonment upon revocation of supervised release, a $100 special assessment, and restitution.

In the case of the first or second such offense and the offense was not committed to facilitate an act of international terrorism or a drug-trafficking crime, the penalties are as follows:  Not more than ten years imprisonment, $250,000 fine, or both, not more than three years of supervised release, not more than two years imprisonment upon revocation of supervised release, a $100 special assessment, and restitution.  In the case of any other offense, not more than 15 years imprisonment, $250,000 fine, or both, not more than 3 years of supervised release, not more than 2 years imprisonment upon revocation of supervised release, a $100 special assessment, and restitution.

In Count 2, voting by alien, the defendant faces not more than 12 months imprisonment, a fine not to exceed $100,000 fine, or both fine and imprisonment, not more than 1 year of supervised release, not more than 1 year imprisonment upon revocation of supervised release, a $25 special assessment, and restitution.

THE COURT:  Thank you, sir.

MR. KIELMANOVICH:  Thank you, your Honor.

* * *

THE COURT: Folks, let me now advise all of you -- I'm now speaking to all of the defendants here today -- of additional important rights that you have under the Constitution and laws of the United States.

Each of has the right to remain silent. Nobody can require you to answer any questions or make any statements about the charges facing you. If you've already made a statement about the charges, you do not need to say any more. If you start to make a statement, you may stop at any time. This right to remain silent can be waived and if you do waive the right to remain silent, then anything you say can be used against you.

Now a defendant who is not a United States citizen may request that an attorney for the Government or a federal law enforcement official notify a consular officer from the defendant's country of nationality that the defendant has been arrested. Even without the defendant's request, a treaty or other international agreement may require consular notification.

Now at a later date, folks, you will be asked to plead guilty or not guilty to the charges against you. If you plead guilty, then there will not be a trial. You will be admitting that you committed the crimes charged. On the other hand, if you plead not guilty, then there will be a trial.

At trial, you have several important rights. You have

the right to counsel and to have one appointed if you cannot afford one.

You will be presumed innocent. There will be no burden on you to prove anything. The Government must prove you guilty beyond a reasonable doubt.

In addition, the Government must bring its witnesses to court. You or your attorney are allowed to cross-examine these witnesses, that is, to ask them questions. This right stems from your right to confront witnesses against you.

You also have the right to present evidence on your own behalf and this includes the right to subpoena witnesses, that is, the right to have the Court issue orders called subpoenas directing witnesses to come to trial so that they may testify on your behalf.

You, yourself, have a choice of whether to testify or not to testify. This right derives from your right to remain silent. No adverse inference, that is, no suggestion that you are guilty, is to be drawn from a decision by you not to testify and the judge will so instruct the jury.

And all of you, of course, have the right to trial by a jury.

* * *

THE COURT: Okay, folks. Let me now turn to these orders providing for your release.

What I would like to do now is review these release

conditions and then get comment. I, I think the Government is in agreement with these conditions. I'll be happy to hear from your lawyer if she has any comments on them. And then I will ask you to sign these orders. There's a place for you to sign on the second page. And then I'll sign them and I'll have a few comments for you about them. What I'm interested in you doing now is not memorizing these conditions 'cause you'll get a copy of this order. What I would like to ask you to do is just listen carefully to make sure that you understand what these conditions are. They're not terribly onerous, but they, your compliance with them is very important.

So listen carefully. If you have a question along the way, feel free to raise your hand and Ms. Wasco can come over and take it up with you.

Okay, folks. The first condition is that you must not violate federal, state, or local law while on release and that includes motor vehicle violation.

In addition, you must cooperate in the collection of a DNA sample if such collection is authorized by law.

In addition, you must advise the Court or the Probation Office or supervising officer in writing before making any change of residence or telephone number. And the key there is to do it before you make the change. You never want to be in a position if the probation officer happens to be trying to reach you and they don't have a current number or

they don't find you at the address they have for you. Just let them know ahead of time.

In addition, you must appear in court as required, which is to say if you have a court date, you need to show up, and if you were to be convicted, that is, found guilty, you must surrender as directed to serve a sentence that the Court may impose. Let me explain more detail what that means.

This refers to the situation in which, as I indicated, a defendant is found guilty and as part of the sentence that the Court imposes is given a term of incarceration, but the defendant is not taken into custody at the time of sentencing. Instead, the defendant is told that in the future he or she will be advised as to what jail facility to show up at to begin service of the sentence. The act of showing up is what is meant by surrendering as directed to serve a sentence that the court may impose.

I want to add that in explaining this language, what this language means to you, I'm in no way making any forecast or prediction about the outcome of your case with respect to whether you'll be found guilty or, or not guilty or what any sentence might be if you were to be found guilty. This is simply form language that's used here that you do need to understand what it means. Whether it will apply to you in the future, nobody knows at this point.

Okay, folks. Those are the conditions. Now there's

also, as part of this order, a listing of penalties and sanctions that can be imposed upon you if you were to violate them. And specifically, it states that:

"Violating any of these conditions of release may result in the immediate issuance of a warrant for your arrest, a revocation of release, an Order of Detention," that is, an order that you be held in custody until either the, either a trial or entry of a guilty plea in place of a trial, "as well as a prosecution for contempt of court and could result in imprisonment, a fine, or both."

There are additional sanctions and penalties here that you can review with Ms. Wasco as your lawyer.

Now by signing this document on, on the second page, you're acknowledging that you are the defendant in this case; that you understand the conditions of release; that you agree to follow all the conditions of release and specifically, to appear as directed and to surrender to serve any sentence that the Court may impose. You're also indicating your understanding of the penalties and sanctions that are set forth in this order.

Mr. Kielmanovich, sir, let me confirm. Is the Government satisfied that these conditions will reasonably assure the appearance of each of these defendants and the safety of the community and any other person pending

disposition of these charges?

MR. KIELMANOVICH: Yes, we are, your Honor.

THE COURT: Very good. Thank you, sir.

Ms. Wasco, are you aware of any change in any of these conditions that any of the defendants seek?

MS. WASCO: Not currently, your Honor.

THE COURT: Okay. Very well.

Let me -- I'm just fixing the page numbers on these and then I will hand these down to you, Ms. Wasco, and ask you to review them with your clients.

(Pause)

THE COURT:: Very well.

Ms. Wasco, could you please approach?

MS. WASCO: Thank you, your Honor.

THE COURT: Thank you.

(Pause)

THE COURT: Ms. Wasco, if it would expedite things, I'm happy to read, read off the portions of this section on penalties and sanctions that I didn't read before.

MS. WASCO: That would be wonderful, your Honor.

THE COURT: Let me wait till the Marshals get done with their duty here.

(Pause)

THE COURT: Folks, what I'd like to do now is -- I'm going to -- I, I alluded to the fact that the release order

describes penalties and sanctions that could be imposed upon you for violation of it. I read to you the first sentence of that description of penalties and sanctions. What I'd like to do now is read the remainder of that notice. And it appears at the top of page 3, or page 2 -- excuse me -- of the order, which you'll see in a moment. It's the page that you're signing. Let me read the remainder of that notice to you. And it reads as follows that:

"While on release if you commit a federal felony offense, the punishment is an additional prison term of not more than ten years and for a federal misdemeanor offense the punishment is an additional prison term of not more than one year. This sentence will be consecutive," that is, in addition to, "any other sentence you receive.

It is a crime punishable by up to ten years in prison and a $250,000 fine, or both, to obstruct a criminal investigation, tamper with a witness, victim, or informant, retaliate or attempt to retaliate against a witness, victim, or informant, or intimidate or attempt to intimidate a witness, victim, juror, informant, or officer of the court. The penalties for tampering, retaliation, or intimidation are significantly more serious if they involve a killing or attempted killing.

If after release you knowingly fail to appear as the conditions of release require or to, or to surrender to serve a sentence, you may be prosecuted for failing to appear or surrender and additional punishment may be imposed.

If you are convicted of an offense punishable by death, life imprisonment, or imprisonment for term of 15 years or more, you will be fined not more than $250,000, or imprisoned for not more than ten years, or both.

If you are convicted of an offense punishable by imprisonment for a term of 5 years or more, but less than 15 years, you will be fined not more than $250,000, or imprisoned for not more than 5 years, or both.

If you are convicted of any other felony, you'll be fined not more than $250,000, or imprisoned not more than two years, or both.

And if you're convicted of a misdemeanor, you will be fined not more than a hundred thousand dollars, or imprisoned not more than one year, or both.

A term of imprisonment imposed for failure to appear or surrender will be consecutive to any other sentence you receive. In addition, a failure to appear or surrender may result in the forfeiture of any bond

posted."

(Pause)

THE INTERPRETER: Thank you.

THE COURT: Thank you.

It looks as if it's going to take Ms. Wasco a few minutes to get the signatures. So why don't -- we'll just take a brief recess while she's taking care of that.

COURT SECURITY OFFICER: All rise. All rise. Court will be in recess.

(Recess from 4:17 p.m., until 4:34 p.m.)

AFTER RECESS

THE COURT: Very well, folks. I now have at the bench here copies of all of these orders setting conditions of release. I do need to ask all of you a brief series of questions now regarding these release orders.

So my first question to you -- I'm assuming that all of you signed the order, the release order in your case after having a chance to review it with Ms. Wasco as your lawyer.

Is that not true for any of you? If that's not true, please raise your hand.

(No response)

THE COURT: I'll note that nobody raised his or her hand.

Is there anybody who does not agree to abide by all the conditions in this order of release?

(No response)

THE COURT: Very well. Nobody raised his or her hand.

Is there anybody who does not understand the conditions of release? Raise your hand.

(No response)

THE COURT: Nobody raised his or her hand.

Is there anybody who has any questions regarding the conditions of release?

(No response)

THE COURT: Very well. I'll note that nobody raised his or her hand.

Is there anybody who does not understand the penalties and sanctions that can be imposed upon him or her for violation of this order as are set forth in the order on page 2? Anybody not understand them?

(No response)

THE COURT: Very well. Nobody raised his or her hand.

Does anybody have any other, any questions at all regarding any other aspect of this order setting conditions of release?

(No response)

THE COURT: Very well. I'll note that none of the defendants raised his or her hand.

Very well, folks. I'm going to go ahead and sign these orders and copies of them will be made available to you.

It's important that you comply very carefully with the conditions of release. And that's important because you want to enable your lawyer at the appropriate time to stand up and tell the court that, "My client was in complete compliance, respects the law, and respects orders of the court." That can only help you in the ultimate disposition of your case.

If there are violations, not only do you face the possible sanctions and penalties that you're now familiar with, but counsel for the Government at the appropriate time in properly doing their job would stand up and say unfavorable things about your respect for the law and court orders and that would not be helpful to you in your case.

So those are unwritten reasons why your compliance is so important with these orders setting conditions of release.

Folks, that covers everything we needed to go over today, but I want to check back with you individually to make sure that you've heard and understood everything that we've gone over.

* * *

THE COURT: Ms. Franco, ma'am, have you heard everything that we've gone over today?

DEFENDANT FRANCO-RODRIGUEZ: Yes.

THE COURT: And do you believe that you've understood everything?

DEFENDANT FRANCO-RODRIGUEZ: Yes, sir.

THE COURT: Do you have any questions, ma'am?

DEFENDANT FRANCO-RODRIGUEZ: No.

THE COURT: Okay. Very well. Thank you.

* * *

THE COURT: Ms. Wasco, ma'am, anything further on behalf of any of these folks at this time?

MS. WASCO: No, Your Honor. Thank you.

THE COURT: Very well.

Mr. Kielmanovich, sir, anything further on behalf of the Government?

MR. KIELMANOVICH: No, your Honor. Thank you.

THE COURT: Thank you, sir.

Well, very good. Then I certainly release all of these defendants.

Madam Clerk -- well, I guess I need --

I'll sign these orders, folks.

And then, Ms. Wasco, I suppose they can arrange through you to get copies. I assume copies could be made right away.

MS. WASCO: Yes, your Honor.

THE COURT: Let me -- I need -- I do need first to sign them. But subject to that, we're done.

So at this time -- folks, I'm going to adjourn court and then I'll sign these orders and you can obtain a copy through Ms. Wasco.

Very well. We're, we're done. Thank you.

COURT SECURITY OFFICER: All rise. This Court will be in recess.-

(Proceedings concluded at 4:42 p.m.)

CERTIFICATE OF TRANSCRIBER

I, Janice Russell, court-approved transcriber, in and for the United States District Court for the Eastern District of North Carolina, do hereby certify that pursuant to Section 753, Title 28, United States Code, that the foregoing is a true and correct transcript from the official electronic sound recording of the proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Dated this 6th day of May, 2025.

/s/ *JANICE RUSSELL*
JANICE RUSSELL
COURT-APPROVED TRANSCRIBER