UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF NORTH CAROLINA
                         WESTERN DIVISION


UNITED STATES OF AMERICA,-   Docket No. 5:18-cr-299-FL-1
                           -
     Plaintiff,            -      New Bern, North Carolina
                           -      December 16, 2019
         v.               -      Sentencing
                           -
DIANA PATRICIA            -
FRANCO-RODRIGUEZ,        -
                           -
     Defendant.           -
--------------------------------

               TRANSCRIPT OF SENTENCING HEARING
         BEFORE THE HONORABLE LOUISE WOOD FLANAGAN
                UNITED STATES DISTRICT JUDGE.


APPEARANCES:

For the Plaintiffs:   United States Attorneys' Office
                      By: Gabriel Diaz
                      150 Fayetteville Street, Suite 2100
                      Raleigh, NC 27601
                      (919) 856-4500

For the Defendant:    Guirguis Law, PA
                      By: Nardine Mary Guirguis
                      434 Fayetteville St., Suite 2140
                      Raleigh, NC 27601
                      (919) 832-0500

Court Reporter:       Tracy L. McGurk, RMR, CRR
                      413 Middle St.
                      New Bern, NC 28560
                      (419) 392-6626



Proceedings recorded by mechanical stenography,
transcript produced by notereading.

(Commenced at 1:34 p.m.)

THE COURT: Let's take up Ms. Guirguis's case, Diana Franco-Rodriguez.

We're discussing the fact that the paperwork said while your client is proficient in English that she would request an interpreter for court proceedings. And we had an interpreter, but she's stepped out. What do we need to do?

MS. GUIRGUIS: Your Honor, Ms. Franco has gotten better and better at English. As such has informed us this past week that she does not need an interpreter.

THE COURT: Is that correct, ma'am?

THE DEFENDANT: Yes, Your Honor.

THE COURT: If there's anything that I say or anyone says that you do not understand, will you please raise your hand, and we'll repeat that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Okay.

You voted, and you're not a citizen of this country, and that is against the law.

Have you read the presentence report?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Have you had enough time to speak with your lawyer?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And she is a Spanish speaker. I'm assuming that you conversed with her and had no trouble understanding her; is that correct?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And are you ready to be sentenced today?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Thank you.  You can be seated.

Let's turn our attention to the government.

So how did she happen to vote in 2016?

MR. DIAZ:  Well, Your Honor, she actually had registered to vote previously.  And she just, with that registration, decided to walk in and register to vote in that election, which was for the President and Vice-President and a member of the House.

THE COURT:  Okay.  And she cannot become a citizen now because she did that; is that your understanding?

MR. DIAZ:  My understanding is she was in the process of becoming a citizen, and at least that has stopped at this point.

THE COURT:  So very significant consequences.

MR. DIAZ: Yes, Your Honor.

THE COURT: Well, what do you think the sentence should be in this case?

MR. DIAZ: Well, Your Honor, as the Court knows, voting when you're not allowed to, it's a serious offense. It dilutes the votes of those of us who can vote lawfully.

However, we've looked at the probation officer's report. It doesn't look like she's ever had any criminal history. So for all these reasons we believe that a probationary sentence in her case is appropriate, Your Honor.

THE COURT: Okay. Thank you.

Ms. Crews, are you here for any other case or just this case?

THE INTERPRETER: No, I am here for the Rodriguez case as well.

THE COURT: Okay. Thank you.

You don't have any criminal history that's resulted in any scoring. You're in that favorable category of a I. The offense level is a 4.

Probation is a possibility for you. You could be sentenced to as much as six months in prison. The fine could be as much as $100,000. And there's a $25 special assessment.

I've read your sentencing memorandum, Ms.

Guirguis. And you're obviously the beneficiary of a similar endorsement by the government of a probationary sentence. So I'm thinking about that.

What else would you like me to know?

MS. GUIRGUIS: Well, Your Honor, I would like to inform the Court that I had requested for a probationary sentence due to the fact that when speaking to my client, Ms. Franco-Rodriguez, and her husband, we knew a hefty fine would be one that would be very difficult.

However, since I had previously informed them of that, when they came into my office this past week after I filed the sentencing memorandum, they had informed me that due to the seriousness of this offense, and the fact that they believed it should take precedence in regards to all of their financial responsibilities, they went right ahead and saved $1,000 and are prepared to pay it today.

In which event, I would be requesting, respectfully so, that in lieu of a probationary sentence that she be lodged a fine of $1,000 so as to insure that they are able to proceed in a manner that is also consistent with 3553(a)(6).

And I will inform the Court that in reviewing all of the other cases, it appears as if she

is aligned -- our request is aligned with approximately eight other cases which were lodged fines of $50, $100, $200, $100, $100, $200, and $100, and another $100.

THE COURT: Well, I think those were all different judges, weren't they?

MS. GUIRGUIS: Yes, Your Honor. But under 3553(a)(6), it does not -- no, actually, that's not correct. 5:18-cr-297 was one of your cases.

THE COURT: Okay. Because I have sentenced some people. But this set of facts is not similar to those cases.

MS. GUIRGUIS: Let me explain to you how these set of facts, Your Honor, are actually more positive.

Ms. Franco-Rodriguez actually at the time in which she learned that she could not vote was in 2016 when she was studying for her naturalization exam. Now, although it's not necessarily what I would say is abundantly clear in the presentence report, if you take a look at the dates, it then becomes a little bit more clear.

Ms. Franco-Rodriguez, on her own, prior to this investigation, not only indicated on the application for naturalization that she registered to vote, but thereafter at the time of her interview

disclosed that to a USCIS officer wherein she also told him that not only was she registered to vote and shouldn't have been, but she also voted and shouldn't have voted. And it was at that time she informed the USCIS officer: What do I need to do? How do I deregister?

And he informed her about the form admission or denial of non-U.S. citizenship. It was mailed out to her. She filled it out, and she sent it.

Moreover, she also sent a letter to the North Carolina Board of Elections wherein she informed them that she voted, and she apologized for her actions because she was not allowed to do so.

So she's the one who took the steps, even in advance of this investigation, to make it known to all of the necessary officials that she could think of that what she had done was wrong.

Of course, other individuals, I would say probably nine out of ten individuals, would never do that. But Ms. Franco-Rodriguez is an outlier in that regard. I don't believe I have come across any set of facts in any one of these cases wherein they, the defendant him- or herself, was the one who informed the officials of their wrongdoing.

THE COURT: Why did she register to vote,

and why did she vote?

MS. GUIRGUIS: The registration transpired only about four years after she was here in the United States. She was over at Wake Technical Community College, as a matter of fact, taking ESL classes due to the fact that she wasn't happy with where her English was. She was very happy to be in this country lawfully. And she believed that it was important for her to speak English well. She did not think at the time that her English was well spoken. So she went to Wake Tech to do just that, to further perfect her English language.

And while she was there, after class she was on her way to Costco, where she was employed. And she, in essence, was caught by a volunteer student who was not aware of the requirement that an individual needed to be a citizen; told her: Don't worry; you have to fill this out really quick.

She said: I don't have time; I need to go.

He said: All right. I'll fill it out. Just sign your name right here.

The form itself is abundantly clear that the only thing that appears to be in her signature is her name. And even -- it's clear that she was in a hurry because you can see the date on there was incorrect, and she had to scratch it out, or he scratched it out, or

something to that effect. But he's the one who filled out the remainder of the form, not her.

THE COURT: Why did she vote?

MS. GUIRGUIS: She was unaware at that time that, being she was not a U S. Citizen, that she could not vote.

Your Honor, I will tell you this: I, myself, am an immigrant. And I will tell you that when we first came to the United States, we didn't know everything. And unfortunately my parents, my mom in particular, believed it important to shelter us so that way she could do everything she could to protect us.

Well, that sheltering, in fact, transpired with respect to Ms. Franco-Rodriguez as well.

It's one of the things that I have come across with many immigrant families who have children that are of adolescent ages. That sheltering can be also something that can prevent individuals from knowing everything that they should otherwise know. And I will tell you that I have learned from my mother's own mistakes. And I believe so has Ms. Franco-Rodriguez.

That is, in part, why it is that she has taken it upon herself to inform not only her family, but also her friends and community. And it's due to her hard work and effort at home for -- for the ability that

her husband and their family to be able to support the community of Clayton and to receive that award that Judge Holcombe had explained in his character letter that I've attached to the Court.

THE COURT: Okay. Thank you.

MS. GUIRGUIS: Thank you, Your Honor.

THE COURT: Would you like to say anything?

THE DEFENDANT: Yes, Your Honor.

Your Honor, Judge Flanagan, I'm sorry. I'm so very embarrassed to be here in front of you. To me it still feels like this is not real, but I know it is. I cannot believe I have placed myself and my family in this nightmare. I'm so very ashamed.

And I know, Your Honor, it might be difficult for you to know, but I tried to do everything right in my life. I'm the kind of person who takes my responsibility seriously to this country. And that is why I'm so very, very ashamed.

Please, Your Honor, I beg for your mercy. I can't say how sorry I am for what I have done. It was wrong. And it was unacceptable.

My family and I would never come to United States if it was not legally. We would not have stayed here if it was not legally. We have had legal level status always. We do everything by the U.S. law.

As a matter of fact, that is the reason why I was at Wake Tech in the first place, because I did not believe that my English was up to par. This was not acceptable to me. I needed to make sure if I was here that I spoke English well. That was important and part of my duties to the United States.

But now I think: What if I was not at Wake Tech learning English? Maybe I wouldn't be here.

But I don't want to change that part of me that wants to do better. So I have to believe that there is -- that there is a bigger and better plan around all of this.

I'm married, and that is a good thing. And I know the law, and I read a lot more now whenever I have, because I pray for our wonderful children, ███ and ███. It is not easy, but I believe it's the most important thing in the world.

I am so cautious now, and I think so much more before I do anything or to let someone help me, even if they look like they are a professional and know what they are doing. I make sure of everything precisely.

I pray to God each day at least twice a day, and I beg him to have mercy on me and to forgive me.

Today I stand here in front of you asking

you to please have mercy on me, Your Honor. And I know that I'm never going to do anything, even the slightest bit of wrong, because I want to do everything right.

Thank you, Your Honor, for this time, and may God bless you.

THE COURT: Thank you.

Do you have an immigration attorney who's working with you?

THE DEFENDANT: Yes, Your Honor.

THE COURT: What have you been told about your ability to obtain citizenship and how this might affect it?

MS. GUIRGUIS: I can speak to that, Your Honor, due to the fact that the immigration attorney is from our firm. I, myself, am tangentially also associated with this matter. It's going to be contingent upon the discretion of the United States Government and what they choose to do thereafter. However, it is very possible that this could impact her ability to move forward.

THE COURT: So when you say "discretion," "what the government chooses to do," can you put that into context?

MS. GUIRGUIS: Absolutely. If they choose not to proceed forward with a notice to appear, which

is, in essence, the way an individual is to go into removal proceedings, then what could transpire is once she's outside of the five-year window for good moral character purposes, she could potentially refile for citizenship.

That being said, it is also contingent upon, in part, whether or not they -- if they bring her into removal proceedings, she will then have the opportunity to file something called Cancellation of Removal. At that point we will learn what the government's position is regarding citizenship.

But certainly given the fact that there are some very good facts in this case, what we're hoping for is her ability not to have to expend that money and go forward on Cancellation of Removal and then have to file for naturalization. What we're hoping is that we can wait the necessary time; she can, in essence, ensure that she reflects upon what has transpired, and make sure that she continues to be involved in the community and her family. So that way we can ensure that USCIS is very familiar with the character and be able to overcome the good moral character issue.

THE COURT: Did you want to make a response?

MR. DIAZ: No, Your Honor. But when she references the government, that would be the Immigration

Service, not the U.S. Attorneys.

THE COURT: Are the proceeds in your trust fund account, or is it a separate check on their account?

MS. GUIRGUIS: It is a separate check in their account.

THE COURT: And you have it in your possession today?

MS. GUIRGUIS: I confirmed he has it in his possession, her husband, Your Honor.

THE COURT: Well, I've considered the advice of the guidelines, and the factors set forth in 18, United States Code, Section 3553 that inform a sentence that's sufficient but not greater than necessary, that reflects on the defendant's background, the nature of the offense, the need to discourage this type of conduct, and to promote respect for the law, protect the public, and provide any treatment.

You show genuine remorse, and I am impressed by that. While I have got to think that you knew you shouldn't have voted, I am confident that you're not going to be in front of me again, and that you have learned from your lesson, I think. And you can be a positive role model to your community. And I think personally you're going to give a lot more thought the

next time someone tells you to sign something.

THE DEFENDANT: Yes, Your Honor.

THE COURT: So I don't think that a sentence of incarceration is necessary. I am going to accept a $975 fine and $25 in your special assessment for a total payment of $1,000 today.

Go up to the clerk's office and pay that, and go forward.

Now, if that check doesn't clear, we have a whole other problem. But I don't think that's going to be an issue. So I don't think I need to put you on probation.

(Discussion had off the record.)

THE COURT: All right. There's no one in the clerk's office. So we're just going to have to take the money right here, Ms. Tripp, and you're going to have to come up with a receipt. Can you do that?

THE CLERK: Yes, ma'am.

THE COURT: Let's go ahead and have the funds paid in now.

Sir, you can come forward. Do you have the check? You're her husband?

UNIDENTIFIED SPEAKER: Yes.

THE DEFENDANT: Thank you, Your Honor.

THE COURT: Why don't you come up and

present that to the clerk, if you're prepared.

                 MS. GUIRGUIS:  Yes, Your Honor.  We have cash.

                 THE COURT:  Cash?  Okay.

                 (Discussion had off the record.)

                 THE COURT:  You do not have cash?

                 MS. GUIRGUIS:  He has a card.

                 THE COURT:  Okay.  You can go get cash and come back.  I'm not going to put you on probation.  We'll hold it open.

                 Thank you very much.

                 MS. GUIRGUIS:  Thank you, Your Honor.

                 THE COURT:  Let's move on.

                 If you do become a citizen, I may swear you in.  You never know.

                 THE DEFENDANT:  Thank you.

                 THE COURT:  Remind me, if I do.  If I'm in that position, remind me where this all started.  Okay?

                 MS. GUIRGUIS:  Thank you, Your Honor.

                 (Unrelated matters heard.)

                     - - -

(Reconvened at 2:40 p.m.)

THE COURT:  We'll take up the Diana Franco-Rodriguez case.

We don't appear to have a representative of the government, but I don't think it's necessary.

Now we have a representative.

Do you have the $1,000?

MS. GUIRGUIS:  Yes, we do, Your Honor.

May I approach?

THE COURT:  All right.  The clerk has prepared a receipt.  This is taken in for a $975 fine and $25 special assessment.  I don't think probation in this case will serve any additional purpose.

Thank you very much.

MS. GUIRGUIS:  Thank you, Your Honor.

(Concluded at 2:41 p.m.)

- - -

**C E R T I F I C A T E**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

/s/ Tracy L. McGurk_____                    ___4/16/2025___
Tracy L. McGurk, RMR, CRR                              Date